## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | CIVIL NO. |
| Plaintiff | |
| v. | |
| EDGARDO J. VEGA BERMUDEZ; VIRGEN M. GONZALEZ VAZQUEZ; ED CONTRACTORS, INC.; ED CONTRACTORS USA, INC.; CONJUGAL PARTNERSHIP EXISTING BETWEEN EDGARDO J. VEGA BERMUDEZ AND VIRGEN M. GONZALEZ VAZQUEZ, | RE:   BREACH OF CONTRACT; INDEMNITY ACTION; SPECIFIC PERFORMANCE; AND DECLARATORY JUDGMENT |
| Defendants | |

## INDEMNITY COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Travelers Casualty & Surety Company of America ("Travelers" or "Surety"), by and through the undersigned counsel, and very respectfully states, alleges, and prays:

<u>JURISDICTION</u>

1.      This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity exists between the parties.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because one or more of the defendants resides in the judicial district of Puerto Rico; a substantial part of the events or omissions giving rise to the claim occurred in the Commonwealth of

Complaint                                                                                                   2

Puerto Rico; all negotiations conducted for the issuance of the Bond or Bonds at issue in this action were conducted in the Commonwealth of Puerto Rico; most of the property placed by defendants to secure their obligations with the Surety is situated in the Commonwealth of Puerto Rico; and the contract giving rise to the action was executed in the Commonwealth of Puerto Rico.

3.      Venue is also proper in this district court because each defendant contractually agreed so and further agreed not to contest this court's jurisdiction or venue:

> "**14. Jurisdiction –** In any legal proceeding brought by or against [Travelers] that in any way relates to this [GAI], each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole option of [Travelers], of the courts in any state in which any indemnitor resides, has property, or in which any Contract is performed. Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert many claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper."

> **Exhibit 1** at 2, par. 14.

<u>PARTIES</u>

4.      Plaintiff Travelers is a company engaged in the subscription of payment and performance bonds, organized pursuant to the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

2

Complaint                                                                                    3

5.     To the best of Travelers' knowledge, Defendant ED Contractors, Inc. ("ED")
is a corporation organized under the laws of and with a principal place of business in the
Commonwealth of Puerto Rico.

6.     To the best of Travelers' knowledge, Defendant ED Contractors USA, Inc.
("ED USA") is a corporation organized under the laws of and with a principal place of
business other than the state of Connecticut.

7.     To the best of Travelers' knowledge, Edgardo J. Vega Bermudez ("Vega") is
married to Virgen M. Gonzalez Vazquez, is domiciled in the State of Florida, and is a
shareholder and President of ED and ED USA.

8.     To the best of Travelers' knowledge, Virgen M. Gonzalez Vazquez
("Gonzalez") is married to Vega, is domiciled in the State of Florida, and is a shareholder
and Secretary of ED and ED USA.

9.     The conjugal partnership existing between Vega and Gonzalez ("Conjugal
Partnership Vega Gonzalez") is domiciled in the Commonwealth of Puerto Rico and may
be a shareholder of ED and ED USA.

<u>FACTS AND BACKGROUND</u>

10.     Travelers hereby incorporates by reference Paragraphs 1 through 9 of this
Complaint.

11.     This case arises from the defendants' breach of an indemnity agreement.
Because of this breach, Travelers has incurred significant direct costs and expenses that
exceed the amount of $3,787,284.79. Travelers' losses continue to increase as it incurs

additional expenses related to the recovery of this sum as well as in the fulfillment of its obligations under the payment and performance bonds described below. Therefore, the total amount to be claimed and proven at trial is expected to be substantially higher.

12.    On January 12, 2018, ED entered into Subcontract Agreement number 216035S21 ("Contract") with Walsh Puerto Rico, LLC ("Walsh"), in the amount of $3,895,000.00 for the construction of the GSA New Federal Building ("New FBI Building Project").

13.    The contract for the New FBI Building Project "was awarded after years of study and review by GSA and FBI in order to design a state-of-the-art facility with cutting edge tools and technology [that] will allow FBI personnel in the Caribbean region to continue to successfully accomplish the ever changing and challenging mission of the FBI. In partnership with GSA and local industry, this project will provide a much needed boost to the island's economy. This is an exciting time for the FBI as we look forward to moving into a new facility in San Juan, PR." Douglas Leff, Special Agent in Charge for the FBI San Juan Field Office. [1]

14.    The importance of the FBI's presence in Puerto Rico, and this new office building particularly, was underscored in 2016 by then Governor Alejandro Garcia Padilla, who stated:

---

[1]    *GSA, FBI Celebrate Groundbreaking of New FBI Facility in Puerto Rico – Facility to Consolidate FBI from Existing Locations in San Juan*, GSA publication, October 21, 2016 (emphasis ours) (Archived at https://www.gsa.gov/about-us/newsroom/news-releases/gsa-fbi-celebrate-groundbreaking-of-new-fbi-facility-in-puerto-rico).

> "The joint efforts of federal and local law enforcement agencies under the Narcotics Strike Forces and the Illegal Firearms and Violent Crimes Task Force Initiative have been successful. The Federal Government has been a partner in all of our efforts and I want to thank you for your support and willingness. **With results such as the lowest murder rate in 30 years,** we are looking forward to continue the relationship between the local and federal criminal justice and prosecutorial agencies in Puerto Rico. "

> <u>Id</u>. (Emphasis ours).

15.    On March 16, 2018, Vega and Gonzalez for themselves, their respective personal representatives, successors and assigns, jointly and severally (collectively "Individual Indemnitors"), subscribed a General Agreement of Indemnity ("GAI") in favor of Travelers, which contents are hereby incorporated in their entirety as if fully set forth in this Complaint. See **Exhibit 1.**

16.    On March 16, 2018, ED and ED USA, for themselves, their respective personal representatives, successors and assigns, jointly and severally (collectively "Corporate Indemnitors"), subscribed the GAI.

17.    Besides the Individual Indemnitors and Corporate Indemnitors, the other indemnitors in the GAI include Conjugal Partnership Vega Gonzalez, as well as any other legal entity in which Vega or Gonzalez or both of them are involved, regardless of whether said legal entity existed at the time the GAI was executed or is otherwise created sometime in the future ("Additional Indemnitors"):

> **"Indemnitors –** Undersigned, all new indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which

one or more of them are involved, whether in existence now or formed or acquired hereafter, and any entity that obtains Bonds from [Travelers] at the request of any of the aforementioned parties, or any combination of the above.

**Exhibit 1,** at 1, Definitions.

18.     The Individual Indemnitors, the Corporate Indemnitors and the Additional Indemnitors will be collectively referred to as "Indemnitors". Indemnitors executed the GAI in exchange for, among other things, Travelers' issuance of separate payment and performance bonds. Specifically, on March 16, 2018, Travelers issued a Performance Bond and a Payment Bond, both bearing number 106888668 ("Bonds"), both naming Walsh as the obligee and ED as the principal under the Bonds, and both in the amount of $3,895,000.00. **Exhibit 2.**In consideration for Travelers' subscription of the Bonds, ED assigned, conveyed and transferred to Travelers all of its rights, title and interest in, among others, the entire amount of the contract funds remaining in the custody of Walsh in the New FBI Building Project, in case ED defaulted under the GAI.

19.     On April 12, 2019, Walsh notified Travelers that ED was in default of the Contract and demanded under the Bonds that Travelers complete the New FBI Building Project. The basis of Walsh's claim was ED's "failure to provide materials to maintain the schedule of work and failure to provide sufficient manpower to maintain the schedule of work." To assist in the independent investigation of the Claim, Travelers retained consultant ROV Engineering Services, PSC ("ROV"). Among other things, the investigation into Walsh's declaration of ED's contractual default showed that:

a) On December 3, 2018, Walsh notified ED that it was delaying the Project by failing to provide materials (specifically 16GA studs) to maintain the schedule of work.

b) On January 7, 2019, Walsh notified ED that it was delaying the Project by failing to provide sufficient manpower (skilled installers) to maintain the schedule of work. Specifically, Walsh explained that ED's lack of sufficient skilled labor was delaying the ability to achieve dry-in, install RF Foil Shielding throughout multiple floors, and complete framing/drywall works in critical path areas such as priority core walls, early access rooms and electrical/mechanical rooms.

c) On March 11, 2019, Walsh scheduled a meeting to coordinate another manpower increase and discuss the remaining construction materials that were still outstanding (track, 16GA studs, acoustical ceiling grid/wire, gypsum board, and STO products). According to the documentation produced by Walsh, ED's principal and Individual Indemnitor Vega did not attend the meeting.

d) In response to Walsh's March 11, 2019 written complaint to ED on this subject, ED promised a manpower increase of at least 15 employees by March 18, 2019. According to documents produced by Walsh, manpower increased for one week then reduced back to an average of 45 to 50 employees per week.

e)  On March 27, 2019, Walsh informed ED in writing that: (i) "ED has failed to maintain the schedule of work", (ii) "this shall constitute the aforementioned Notice of Default" and (iii) "should ED fail to commence and satisfactorily continue correction of its default within seventy-two (72) hours after receipt of this notice issued under Paragraph 8.1, Walsh shall mitigate the damages resulting from your default, and take any and all means necessary to protect its interests and maintain the construction schedule."

20.    On May 29, 2019, according to Walsh, ED's supervisory staff did not appear at the Project site. As a result, ED's subcontractors were unable to reach tools, materials or onsite office.

21.    According to Walsh, on May 30, 2019, ED's subcontractors walked off the Project site due to ED's abandonment of the Project.

22.    On June 7, 2019, Travelers, with full reservation of rights, remedies, claims and defenses available to Travelers **and** ED, arranged, as surety or through the rights of subrogation or that ED has for the completion of the remaining work under the Contract by DFM Contractors, LLC. ("DFM"), under the conditions, rights, and obligations accorded in a Takeover Agreement between Travelers and Walsh ("Takeover Agreement"). On June 14, 2019, Travelers perfected a first-priority lien over the rights, titles and interests granted to it by the Indemnitors under the GAI when it filed a UCC-1 Financing Statement with the Puerto Rico State Department. **Exhibit 3.**

## DEFAULT AS DEFINED IN THE GAI

23.     In page 1 of the GAI, the parties agreed to a very specific definition of what exactly constitutes "default" under the GAI's terms and conditions. Where relevant to this complaint, the parties agreed as follows:

> **"Default –** Any of the following shall constitute a Default:
>
> (a)     a declaration of Contract default by any Obligee;
>
> (c)     a breach of any provision of this Agreement;
>
> (d)     failure to make a payment of a properly due and owing bill in connection with any Contract;
>
> (e)     [Travelers'] good faith establishment of a reserve; and
>
> (g)     any Indemnitor's […] actually becoming insolvent.
>
> **Exhibit 1** at 1.

24.     As explained below, defendants breached each one of the GAI's subsections quoted above.

### FIRST CAUSE OF ACTION
### BREACH OF INDEMNITY AGREEMENT
### DECLARATION OF CONTRACT DEFAULT BY AN OBLIGEE

25.     Travelers hereby incorporates by reference paragraphs 1 to through 24 of this Complaint.

26.     On Wednesday, March 27, 2019, Walsh issued ED a Notice of Default and required ED to "commence and satisfactorily continue correction of its default within seventy-two (72) hours after receipt of this notice". **Exhibit 4** at 3. While the Contract

Complaint                                                                                                    10

was not – and still has not – been terminated by Walsh, and without entering into the merits of Walsh's March 27, 2019 declaration of default, the mere fact that said declaration was issued by Walsh constitutes a default under the GAI, as explained in paragraph 23, above.[2]

SECOND CAUSE OF ACTION<br>BREACH OF INDEMNITY AGREEMENT<br>FAILURE TO MAKE A PAYMENT OF A PROPERLY DUE AND OWING BILL IN<br>CONNECTION WITH ANY CONTRACT

27.    Travelers hereby incorporates by reference paragraphs 1 to through 26 of this Complaint.

28.    As of the date of this filing, Travelers has received multiple claims for payment from ED laborers and materialmen for bills that are properly due and owing and which were not paid by ED. While some of these claims are being investigated by Travelers, the following have already been paid by Travelers pursuant to Travelers' Bond obligations: (i) ACHA Trading in the amount of $72,753.35, (ii) AOR in the amount of $113,628.31, (iii) Caribtrans Logistics, LLC in the amount of $2,400, (iv) DFF, Inc. in the amount of $6,360.26, (v) DFM in the amount of $87,960.63, (vi) Insulation Specialties Contracting Corp. in the amount of $18,180.80, (vii) Puerto Rico Wire Products, Inc. in the amount of $17,686.15, (viii) Rosen Materials, LLC in the amount of $7,534.80 and (ix) NMP Contratista, LLC in the amount of $53,359.88. ED's failure to pay these properly

---

2    It is important to note that ED never disputed Walsh's declaration of default in the manner contractually agreed and as required by Article 11 of the Contract, Dispute Resolution.

Complaint                                                                                              11

due and owing bills constitute a default under the GAI, as explained in paragraph 23, above.

### THIRD CAUSE OF ACTION
### BREACH OF INDEMNITY AGREEMENT
### TRAVELERS' GOOD FAITH ESTABLISHMENT OF A RESERVE

29.     Travelers hereby incorporates by reference paragraphs 1 to through 28 of this Complaint.

30.     In light of the costs and expenses incurred by Travelers in the fulfillment of its obligations under the Bonds, including but not limited to the Takeover Agreement, claims investigation and related payments, and the anticipated costs and expenses to be incurred by Travelers in the completion of the Project pursuant to the Takeover Agreement as well as investigating, settling and paying currently pending claims for payment from materialmen and subcontractors, Travelers established in good faith a reserve of four million two hundred eighty-eight thousand four hundred and twenty-three dollars ($4,288,423.00). "[Travelers'] good faith establishment of a reserve" constitutes default under the GAI, as explained in paragraph 23, above.

### FOURTH CAUSE OF ACTION
### BREACH OF INDEMNITY AGREEMENT
### FAILURE TO COLLATERALIZE TRAVELERS

31.     Travelers hereby incorporates by reference paragraphs 1 to through 30 of this Complaint.

32.     In the GAI, defendants agreed, among others, as follows:

> "**5.   Collateral Security:** Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. [...] Sums deposited with Travelers pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond. [...] Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph."

**Exhibit 1** at 2, par. 5.

33.    The purpose of collateral security provisions in an indemnity agreement is to protect the surety against uncertain future loss. This contractual provision expressly protects Travelers from experiencing post-judgment uncertainty by providing pre-judgment security. It protects Travelers from using its own funds to pay amounts owed under the Bonds by requiring the Indemnitors to post the collateral once a claim is made against the Bonds.

34.    On July 14, 2019, Travelers required from defendants "that, within the next three (3) business days, the Indemnitors promptly pay Travelers four million two hundred eighty-eight thousand four hundred and twenty-three dollars ($4,288,423.00), representing the reserve that Travelers has established in connection with this Bond." **Exhibit  5** at 2**.** As of the filing of this complaint, defendants have failed to deposit with Travelers the aforementioned amount. Defendants failure to fulfill their obligations under the provisions of paragraph 5 of the GAI is "a breach of any provision of this Agreement". **Exhibit 1,** supra. This constitutes a default under the GAI as explained in paragraph 23, above.

FIFTH CAUSE OF ACTION
BREACH OF INDEMNITY AGREEMENT
FAILURE TO INDEMNIFY AND HOLD HARMLESS TRAVELERS

35.    Travelers hereby incorporates by reference paragraphs 1 to through 34 of this Complaint.

36.    In the GAI, Indemnitors agreed, among others, as follows:

> **3.    Indemnification and Hold Harmless:** Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss. An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to [Travelers] are payable upon demand."

> **Exhibit 1** at par. 3.

37.    As a result of fulfilling its obligations under the Bonds after Walsh declared ED in default of their contract, Travelers has incurred losses in the amount of $3,787,284.79. This amount, however, will increase as Travelers continues to investigate and resolve multiple third-party claims under the Bonds and incurs legal fees in the litigation of this case.

38.    Travelers moves for the specific performance of Indemnitors' duties and obligations under the GAI and, among others, for an order to Indemnitors to immediately deposit in court the amount of $3,787,284.79.

SIXTH CAUSE OF ACTION
BREACH OF INDEMNITY AGREEMENT
INDEMNITOR'S INSOLVENCY

Complaint                                                                                          14

39.     Travelers hereby incorporates by reference paragraphs 1 to through 38 of this Complaint.

40.     On June 25, 2019, ED filed a complaint against DFM in the Puerto Rico Superior Court, San Juan Part. **Exhibit 6.** In the complaint, ED admitted that, as a result of DFM's alleged acts and omissions, ED became insolvent. Specifically, the following damages are alleged by ED in the complaint:

a) Cease of its operations because the New FBI Building Project "kept ED alive." Id. at p. 8, par. 40(a).

b) Economic collapse of the corporation. Id. at p. 8, par. 40(i).

41.     Furthermore, in correspondence dated June 20, 2019 from ED's counsel to Travelers', in one of its *non sequiturs* ED's counsel admitted that ED had collapsed as an entity: "Further, we don't know if the delivery has been made, but ED will submit an invoice related to the personnel that work during the operation as you must be aware, Travelers' actions and/or omissions to investigate and perform diligently and in good faith has contributed ***in ED collapse.***" **Exhibit 7** at 4 (emphasis ours). ED's collapse or insolvency constitutes default under the GAI, as explained in paragraph 21, above.

SEVENTH CAUSE OF ACTION
BREACH OF INDEMNITY AGREEMENT
FAILURE TO DISCLOSE FINANCIAL INFORMATION

42.     Travelers hereby incorporates by reference paragraphs 1 through 41 of this Complaint, as if fully set forth herein.

43.     In the GAI, Indemnitors agreed, among others, as follows:

> "**10. Books, Records and Credit:** Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize [Travelers] to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions."

> **Exhibit 1**, at 2, par. 10 ("§ 10").

44.     Travelers' right to access defendants' books, records and credit information under § 10 of the GAI does not depend on or otherwise require defendants' default under the GAI or any other contract. Instead, it is a right that Travelers may exercise at any reasonable time in order to ensure that the economic guarantees defendants granted Travelers under the GAI do not erode or otherwise become nonexistent.

45.     Travelers coordinated with defendants an in-site visit to ED's offices for May 7 and 8, 2019. In advance of said visit, Travelers' accounting department provided a list of documents that were to be produced by defendants under § 10. Many of said documents were not produced although Vega informed that he would produce them shortly on behalf of ED and of the Indemnitors.

46.     **Exhibit 8** to this complaint is a Travelers' email dated May 14, 2019 to defendants and their certified public accountant with the list of documents that remain outstanding. As of the date this complaint is filed, defendants have failed to produce the documents requested under § 10 and that are detailed in **Exhibit 8.** By failing to provide

Complaint                                                                                     16

these documents to Travelers, defendants defaulted on their duties and obligations under § 10 of the GAI.

47.    Travelers moves for the specific performance of Indemnitors' duties and obligations under the GAI and, among others, for an order to Indemnitors to immediately produce to Travelers Indemnitors' "Books, Records and Credit" as said term has been defined in the GAI and quoted in paragraph 41, above.

EIGHTH CAUSE OF ACTION
BREACH OF INDEMNITY AGREEMENT
FAILURE TO DELIVER PROPERTY

48.    Travelers hereby incorporates by reference paragraphs 1 to through 47 of this Complaint.

49.    In the GAI, Indemnitors agreed, among others, as follows:

"**6. Remedies:** In the event of a Default, Indemnitors assign, convey and transfer to [Travelers] all of their rights, title and interest in Property, and [Travelers] shall have a right in its sole discretion to: (a) […]; (b) immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use[.]"

**Exhibit 1** at 2, par. 6.

50.    On July 1, 2019, Mr. Armando Perez, an employee of Travelers' consultant ROV Engineering, Inc. ("ROV"), asked ED on behalf of Travelers for the Property in ED's possession, also reminding ED that its "immediate and complete cooperation on this matter is very important and necessary to give continuity to the project." **Exhibit 8.**

51.     Faced with ED's failure to produce or otherwise deliver the Property, on July 10, 2019, Mr. Angel Berrios, an employee of ROV, asked ED on behalf of Travelers "where [do] we stand with this request for access to the materials." **Exhibit 9.**

52.     On July 12, 2019, ED responded refusing to deliver the Property unless Travelers first paid ED for it: "ED shall be compensated accordingly by the reasonable cost for the insulation materials before pick up." **Exhibit 10.** ED's refusal to deliver the Property unless Travelers first paid for it breaches the GAI because:

> a.  The Property belongs to Travelers, not ED. In the GAI, ED assigned, conveyed and transferred to Travelers all of ED's rights, title and interest in the Property, in case of a default, and ED has defaulted on the GAI in eight different manners, as described above.

> b.  In the GAI, ED obliged itself to allow Travelers to "immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use". **Exhibit 1,** supra. Holding the Property hostage to monetary payment from Travelers violates this section of the GAI.

NINTH CAUSE OF ACTION
BREACH OF INDEMNITY AGREEMENT
DECLARATORY JUDGMENT

53.     Travelers hereby incorporates by reference paragraphs 1 to through 52 of this Complaint.

54.     In consideration for Travelers' subscription of the Bonds, ED also assigned, conveyed and transferred to Travelers all of its rights, title and interest in, among others, Property, as the term is defined in the GAI, as well as the rights, title and interest to "assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as [Travelers] sees fit," in case ED defaulted under the GAI. See **Exhibit 1** at 2, § 6.

55.     On June 25, 2019, Corporate Indemnitor ED filed a complaint before the San Juan Superior Court seeking damages against DFM , Guarionex Carrion, Diomedes F. Maria, Fulano y Mengano de Tal, Sureties A, B, C, and Unknown Insurers A, B and C ("State Court Defendants"). **Exhibit 6** ("State Court Lawsuit"). ED's claims against the State Court Defendants are based on the Contract and are detailed as follows:

a)  Tortious contractual interference with the Contract;

b)  Damages to ED's reputation resulting from the tortious contractual interference.

**Exhibit 6** at 9-14.

56.     Pursuant to the explicit terms of the GAI, ED assigned, conveyed and transferred to Travelers all of its rights, title and interest in, among others, the assertion or prosecution of the claims ED raised against the State Court Defendants in the State Court Lawsuit. This means that ED does not have standing to file the State Court Lawsuit – as a result of the GAI, only Travelers has standing to do so.

57.     Travelers seeks from this Honorable Court a declaratory judgment holding that ED does not have standing to file the State Court Lawsuit because the claims raised therein were assigned, conveyed and transferred to Travelers in the GAI, and ordering ED to immediately and voluntarily desist from the State Court Lawsuit.

**WHEREFORE,** Travelers moves the court to enter judgment against each and every one of the Defendants, jointly and severally, as follows:

a)     ORDER defendants to pay Travelers jointly and severally an amount to be proven at trial of not less than $3,787,284.79, plus interest, costs, and attorney's fees, as reimbursement for costs, losses and damages incurred and monies expended by Travelers as a result of the Bonds issued under the GAI,

b)     DECLARE that ED does not have standing to file the State Court Lawsuit because the claims raised therein were assigned, conveyed and transferred to Travelers in the GAI,

c)     ORDER ED to cease and desist from the State Court Lawsuit, and

d)     ORDER defendants to immediately produce to Travelers' counsel their respective "Books, Records and Credits", as the phrase has been defined in the GAI.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of October 2019.

Complaint                                                                                                    20

**IT IS HEREBY CERTIFIED** that the foregoing was filed with the Clerk of the

Court using the CM/ECF system, which will send notification electronically to all counsel

of record.

SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ,
P.S.C.
166 Ave. de la Constitución
San Juan, P.R. 00961
Tel. (787) 289-9250
Fax (787) 289-9253

*s/ Carlos A. Steffens-Guzmán*
CARLOS A. STEFFENS-GUZMÁN
USDC-PR No. 210807
csteffens@scvrlaw.com
